WHITTELSEY, Appellant, v. BROHAMMER *et al.*, Respondents.

1. *Quere,* whether an action in the nature of an action of debt can be maintained against an heir on the bond of his ancestor.

2. Where the judgment rendered against the heir in such case is a general judgment, it can bind only from the time of the rendition thereof; it will not operate by way of relation so as to affect sales of lands descended to the heir from such ancestor made in good faith before the rendition of such judgment.

*Appeal from St. Louis Land Court.*

This was an action brought to recover possession of a lot of ground in the city of St. Louis. The petition sets forth substantially that Valentine Finck, formerly of St. Louis county, died seized of the premises described in the petition, leaving his widow, Johanna Finck, now wife of defendant Philip Mueller, his only heir, upon whom said estate descended; that said B. Finck, with other persons, executed to the State of Missouri, in the penal sum of thirteen thousand dollars, as security for Jacob Mueller as administrator of the estate of Catherine Mueller, deceased; that, there having been a breach of the condition in said bond, after the decease

of Valentine Finck suit was brought upon the same in the St. Louis court of common pleas, in the name of the State of Missouri, to the use of Adolph Kehr, administrator *de bonis non* of said Catherine Mueller, against said Johanna Finck as heir of said Valentine; that said Johanna appeared and defended the suit and admitted that the lot described in the petition descended to her as assets of said Valentine, and that on the 6th of January, 1857, judgment was rendered in said suit in favor of the plaintiff therein against said Johanna Finch as heir of said Valentine Finck, deceased, in the sum of thirteen thousand dollars, upon which judgment execution issued according to law, by virtue of which, for want of sufficient goods and chattels of said Valentine Finck, the said real estate was levied upon by the sheriff, and on March 9, 1857, was sold to the plaintiff in this suit; that the sheriff made to him a deed for said land as the real estate of said Valentine at the time of his death, which deed passed to plaintiff all the right, title and interest in said land which Valentine Finck had at the time of his death; that, during the pendency of said suit, Johanna Finck conveyed said property to Joseph Brohammer, who subsequently conveyed it to Lorenz Brohammer, who holds it in trust for Johanna, wife of Anthony Luis and daughter of Johanna Finck; that said deeds were made upon a merely nominal consideration and with the express intent of defrauding the plaintiff in said suit, and that no consideration was actually paid for said deeds. Plaintiff prayed for a decree setting aside said deeds and for possession.

The defendants admit in their answer that the said premises descended to Johanna Finck as stated; admit the execution of the bond and the suit thereon, but deny that said suit and proceedings therein are correctly stated by plaintiff; admit that Johanna is the wife of the defendant Mueller, and state that she married him during the pendency of the suit on the bond in the common pleas court and before the rendition of the judgment; that the execution and sale by the sheriff were irregular and void, were nullities, and that plain-

tiff acquired no right or interest whatever, under the same, in said premises; admit the execution of the two deeds mentioned in the petition, but deny that they were made with any fraudulent intent, and insist that they are valid and operative against the plaintiff in this suit.

In the suit in the common pleas court on the bond of Mueller judgment was rendered in behalf of the plaintiff Kehr, against the defendants Bidlingmaier, Reinhart and Johanna Finck for the penalty of the bond—$13,000. This was a judgment by default as to Reinhart and Johanna Finck. Its date was January 6, 1857. The damages were assessed at $8,194.91. In the entry of judgment nothing is said as to the judgment being against Johanna as heir of Valentine Finck; it is in the common form. The execution issued under this judgment recited a judgment against Bidlingmaier, Reinhart "and Johanna Finck, heir of Valentine Finck," and commands the sheriff to make the amount " of the goods and chattels and real estate of the said Leonard Bidlingmaier, Jacob Reinhart, and which were of said Valentine Finck at the time of his death." The sheriff's deed conveying the real estate in controversy to plaintiff contains the statement—interlined before execution in the handwriting of plaintiff in the present suit, who was attorney for the plaintiff in the suit in the common pleas—that " for want of sufficient goods and chattels whereon to levy" he did levy upon and seize said real estate, describing it as the real estate of said Valentine. The property was sold by the sheriff to the plaintiff for two hundred and eleven dollars. The value of the property at the time of the purchase by plaintiff was not less than nine thousand dollars.

The cause was submitted to the court upon the pleadings and exhibits referred to therein and certain agreed statements of facts. The substance of these is stated above. The court refused all the instructions asked on both sides. The following are those prayed by the plaintiff: " 1. It being charged in the petition, and not denied in the answer, that the deeds from Johanna Finck to Joseph Brohammer, and

from Joseph Brohammer to Lorenz Brohammer, trustee of Johanna Luis, the daughter of Johanna Finck, were made without any valuable consideration, the said deeds were voluntary and fraudulent as against the plaintiff, a purchaser under the judgment and execution mentioned in the sheriff's deed and petition in this suit. 2. Upon the pleadings and evidence in this cause, the plaintiff is entitled to the relief prayed for in the petition."

The court decided upon the whole evidence that the plaintiff was not entitled to recover, holding that the execution and sheriff's sale and deed passed no title to the plaintiff, as the execution did not follow the judgment.

*Whittelsey*, for appellant.

I. The court erred in declaring that the sheriff's sale passed no interest in the land sued for on account of the variance between the judgment and the execution. At common law, where the heir pleaded *riens per descent*, and the issue was found against him, or upon a judgment by default, the judgment against the heir was general, and so was the execution. (R. C. 1855, p. 736, § 4.) Johanna Finck was sued on account of assets real descended. The personal assets would have passed to heirs out of the United States. There was no error therefore in the writ in its direction to the sheriff to make the debt out of the real estate descended. (See 2 Saund. 7; 29 Car. II., c. 3, § 11; R. C. 1855, p. 736; R. C. 1845, p. 475; R. C. 1835, p. 253; R. C. 1825, p. 369; 7 Mo. 431; 19 Mo. 650; 14 Vin. 241.) The error or defect complained of could not be taken advantage of in this collateral action. The error in the writ could have been amended. The party might have applied to the court to set aside the sale and order a new writ. The writ was not void, if even voidable. (18 Mo. 29; 16 Mo. 68, 173, 331; Bald. C. C. 246; 25 Penn. 102; 11 Mo. 295; 3 Wils. 368; 17 Mo. 71; 1 Mo. 469; 5 Johns. 92; Cro. El. 188; Cro. Jac. 289, 280; 4 Cranch, 333; 11 Mo. 188; 4 Bibb, 332; 2 Burr, 1187; 8 Mo. 257; 10 Pet. 472; 12 Mo. 238; 9 Mo. 722; 8

Johns. 361; 1 S. & R. 92; 1 Monr. 94; 5 Monr. 478; 4 Wend. 436; 5 Conn. 529; 17 Johns. 167; 13 Johns. 97, 536; 10 Fost. 318; 2 Swann, 156; 27 Miss. 560; 23 Miss. 496; 11 Humph. 189; 2 Carter, 309; 5 Engl. 541; 11 Penn., State, 19.) The rule should be uniform that the sale is valid in all collateral cases unless the proceedings be absolutely void for want of power in the court or officers. If the power exists, the sale should be valid, no matter how defective the process. (3 Barb. Ch. 184; 2 Barb. 307; 2 Strob. 207; 2 Cart. 309; 1 M. & S. 425; 1 Ves. sr. 195; 5 Pet. 369; R. C. 1855, p. 1254, § 6, 19; 8 Wend. 676; 4 Wend. 585; 5 Cow. 529; 9 Mo. 605; 20 Mo. 447; 18 How. 164; 4 Pet. 162; 12 Mo. 238; 27 Mo. 438; 6 Ill. 435.) The defendants in this suit, who held by conveyances fraudulently made, could not object to the variance between the judgment and execution. The fact that the purchaser at the sheriff's sale was the attorney in the original suit will not affect the validity of the sale, unless it appear that he was guilty of some act *in pais* that made the purchase fraudulent as to the judgment debtor. (See 27 Mo. 428; 4 Mich. 205; 11 Johns. 464; 18 Mo. 29; 17 Mo. 71; 2 Strob. 207; 2 Cart. 309.) Tha actual value of the land sold, with the possession and title undisputed, compared with the amount bid, can have nothing to do with the question in the collateral issue. (23 Mo. 579.) The court erred in refusing to declare, as prayed, that the deeds from Johanna Finck to J. Brohammer and from the latter to Lorenz Brohammer, were made without valuable consideration and were fraudulent as against the plaintiff. It was expressly charged that said deeds were made without valuable consideration and with intent to defraud the plaintiff in the original suit. The facts were not denied, but the intent was. This was not sufficient. (R. C. 1855, p. 1232, § 12, p. 1238, § 48.) If fraudulent, the plaintiff was entitled to the relief prayed, provided the sheriff's deed passed the title. The court erred in refusing upon the pleadings and evidence to give judgment for the plaintiff. The deed from Johanna Finck having been made after suit

brought and without consideration, the land conveyed was still liable to the execution of the judgment. (2 Sand. 7; 1 Yeats, 238; 20 Johns. 414; 2 Halst. 259; 4 Back. Abr. 165; 6 Conn. 258; 16 Pet. 63; 5 Coke, 60; 5 Halst. 259; 2 Pet. 658; R. C. 1845, p. 421, 420, 216; 4 Kent, 419; 3 Black. Com. 430.) The reversal of the judgment can not affect the title passed by the sheriff's sale and deed. Johanna did not prosecute a writ of error. A writ of error is no supersedeas, and does not stay execution except in special cases. (R. C. 1855, p. 1297, § 14, 15, p. 1287, § 12, 16, 17.) All proceedings under the judgment were valid until reversal. (See R. C. 1855, p. 1282, § 20.) The reversal of a judgment does not affect the proceedings under it before reversal. This rule is the same at equity as at law. (See 8 Co. 96; 1 Cow. 611; 6 Harr. & Jo. 182; 3 Ham. 353; 2 Bibb, 202, 518; 3 Bac. Abr. Error, M. 3; 1 M. & S. 425; 4 Dana, 98; 4 B. Monr. 262; 3 A. K. Marsh. 253; 16 Mo. 173; 2 Sch. & Le. 565; 9 Ves. 37; 1 Ves. jr. 565; 1 Murph. 272; 5 Ohio, 120; 9 Ala. 260; Yelv. 179; Cro. Jac. 246; 2 Salk. 588; Dyer, 363; 6 Ill. 435; 11 Ill. 519; 8 Mo. 257; 18 Mo. 29.) That the attorney of plaintiff was the purchaser does not avoid the sale, although in equity he might be held to have notice of the error, if any. The attorney purchasing is a third person to the execution. (6 Ill. 435; 2 Cart. 308.) The award of restitution on the reversal could not affect the attorney, nor could it affect the plaintiff in a collateral suit for the land. The remedy must be by motion on notice to the plaintiff, or by *scire facias*, or by bill in equity, or suit at law. (6 Pet. 8, 16.)

*Hamilton*, for respondents.

The reversal of the judgment was not a reversal as to Bidlingmaier alone; it was necessarily a reversal as to all. (Bac. Abr. Error, M. 1; Carth. 235; 2 Tuck. Com. 325; 19 Mo. 441; 25 Mo. 78; 25 Mo. 411.) Since then there has been a trial below and a dismissal as to Bidlingmaier, and a recovery of nominal damages only against the other defendants.

The appellant can not claim the protection allowed to a stranger or *bona fide* purchaser coming in under a reversed judgment. As attorney of record, plaintiff had notice of all errors and irregularities. (There must be a subsisting title. (Bac. Abr. Error, M. 3, Execution 2; Tidd's Prac. 1187, 12 Barb. 83; 11 Ill. 524; 13 id. 486; 8 Ohio, 120; 2 Hill, 633; 1 Gray, 67; 1 Gilm. 441; 5 id. 444; 6 Pet. 16; 8 Humph. 410; 11 id. 189; 7 Ala. 484; 18 Ala. 405; 21 id. 343; 2 Binn. 85; 1 Harr. & Jo. 405; 2 Cow. & Hill's Notes, 139; 20 Ill. 276; 29 Pa. 349; 9 Cal. 479; 36 N. H. 436; Yelv. 179; Dyer, 363; Cro. Eliz. 178; Cro. Jac. 246; 8 Co. 96; 25 Miss. 456; 2 Up. Can. 389.) The execution differed in legal effect from the judgment in the original suit, which was general against all the defendants personally, not naming Johanna Finck in her representative capacity, and was without discrimination as between her and the other parties as to the mode of its enforcement. Surviving securities being joined as co-defendants, a separate judgment against her as heir would have been necessary to reach the assets descended. The judgment as entered was not the result of mere clerical omission or misprision, but the court proceeded upon the theory of the common law liability of the heir, charging her personally with the debt, as the suit was undefended by her. (Bac. Abr. Heir & Ancestor, 1; Tidd's Pr. 938.) The judgment has been reversed and there can be no further control over it. How was this judgment to be executed? A common *fi. fa.* against the property of the several defendants alike was the only writ to which the plaintiff was entitled. The mandate of the execution, filled up under the dictation of the plaintiff, was wholly unauthorized and inoperative. It is only when the judgment is against the heir as such that the fourth section of the execution law is applicable. If not so entered, the ordinary *fi. fa.* is the only and adequate final process. Johanna Finck's own estate could have been levied upon under the judgment. This could only be because it was against her personally. The judgment could not be both general and special at the elec-

tion of the plaintiff in the suit. At the death of the ances-
tor the heir becomes the owner of the lands by the same right
which the ancestor himself had when living, and his title can
only be defeated in one of two modes, either by an order of
sale under the administration law, or by proceedings institu-
ted against him by a creditor of the intestate resulting in a
judgment or decree subjecting said lands to the payment of
the debts. No such suit can be had against the heir until
administration closed, and then only in exceptional cases.
Not until the personalty is exhausted can the realty be
reached. The heir has a disposing power over the lands.
The mere pending of a suit does not deprive him of it. His
deed, though voluntary, is effectual to pass the title. If the
contingent liability for debts were a lien, and further, if the
original action had taken the form of a proceeding *in rem*, it
would not advance the plaintiff a step. It is the judgment
which determines whether the proceedings are *in rem* or *in
personam*. This is not the case of a judgment creditor seek-
ing to discover and subject assets to the payment of the
debts. The original suit did not result in a condemnation
and appropriation of this land to the satisfaction of the judg-
ment, nor was the property levied on as belonging to Johanna
Finck. For aught that appears there was no necessity for
resorting to it. It seems to be assumed that the right to
issue execution directed against the assets in the hands of a
third party attaches as an incident to a general judgment.
The heir is no longer liable personally as under the codes of
1825 and 1835 for omitting to plead. At the common law
the heir was liable upon a twofold principle, as being bound
by the deed, and as having assets by descent. Here his lia-
bility does not depend upon his being named in the obligation,
and when bound at all, it is as well for debts by simple con-
tract as for those by specialty. By our law the personalty is
assets, the realty may become such. Both are placed under
due course of administration, during which he is protected
from all process on the part of creditors. Alienation *bona
fide* by the heir before suit brought was a defence at common

law; but here he, who deals with the heir, whether for value or not, and whether suit pending or not, takes with a knowledge of the liability of the lands for the debts, and holds subject to them if pursued within a reasonable time. The fourth section of the statute of executions is a departure from the common law. The common law is rather against than in favor of plaintiff. A general judgment did not operate by way of relation to the original, except where there had been a covinous conveyance by the heir, but bound only as in common uses from the time of the judgment given. (Bac. Abr. Heir & Ancestor, F.; 2 Show. 186; 14 Vin. Abr. 246; Rob. on Frauds, 602; 2 Powell on Mort. 601; see Tidd's Pr. 1089; 2 Saund. 7, n. 4; Bingh. on Judgments & Executions, 72; Tidd's Forms, 440, 441.) This case presents the novel experiment of an effort to change the operation of a judgment from the proper estate of the defendant to the land descended from the estate then in the hands of third parties, not only without leave of court, but in known opposition to its declared views. No doubt Johanna Finck, on summary application, could have procured the quashal of the writ; these defendants, not having been parties to the suit, could not have resorted to such a measure. (4 Wash. 59; 5 Barb. Ch. 185.) The objection here made amounts to a want of power to sell, and these defendants may raise it whenever the title acquired at the sheriff's sale is asserted against them. (2 Cush. 38; 11 Ill. 524; 2 Green's Ch. 143; 7 Halst. 186; 3 A. K. Marsh. 619; 5 Dana, 278.)

SCOTT, Judge, delivered the opinion of the court.

This was an action brought by the plaintiff to recover the possession of a lot of ground in St. Louis, and to set aside certain deeds alleged to be fraudulent. Valentine Finck and others, as securities for Jacob Mueller, admi.istrator of the estate of Catharine Mueller, deceased, executed to the State of Missouri a bond in the penalty of thirteen thousand dollars, conditioned in pursuance to law. After the execution of the bond, and before a breach of the condition thereof,

Valentine Finck died, leaving as his heir at law Johanna Finck, to whom the lot in controversy descended.  A breach of the condition of the bond being afterwards made, a suit was brought upon it in the name of the State of Missouri, to the use of A. Kehr, administrator *de bonis non* of Catharine Mueller, against the other securities, as well as the said Johanna Finck as the heir of the said Valentine Finck.  There was a judgment by default taken against the said Johanna, which was afterwards made final.  This was a general judgment for the damages assessed, and there was an award of execution for the damages.  This judgment was afterwards reversed in this court and is reported in 26 Mo. 483.  Pending the suit on the bond Johanna Finck conveyed the lot in dispute to Joseph Brohammer, who conveyed it in trust to Lorenz Brohammer for the benefit of a daughter of Johanna Finck.  These deeds are alleged to be fraudulent, and to have been made without any consideration, and there is a prayer to have them set aside.  On the judgment obtained against Johanna Finck as heir, the lot in controversy was sold under an execution to the plaintiff, who received a deed therefor, which is the foundation of his title.

There was no oral evidence in the case, and the court, rejecting all the instructions asked by both parties, rendered a judgment for the defendant.

The suit, out of which this action has arisen, is the first instance that has fallen under our observation in which an action has been brought on the bond of the ancestor against his heir.  Under the common law system of administering descendants' estates, this was no uncommon thing.  But our mode of administration is so different from that prevailing at the common law, that an action of debt on a bond against the heir can not be maintained, if at all, but under peculiar circumstances.  The provisions in our code of laws, which seem to contemplate the existence of the right to maintain such an action, were taken through inadvertence from the laws of states whose system of administration conformed more nearly to the common law.  These observations are

made, not with a view to found any objection to the plaintiff's title on the fact that an action was brought on the bond of the ancestor against his heir, and that the premises in controversy were sold under a judgment obtained in such action; but to show that the remedy adopted was an absolute one, and is entitled to no special favor of the courts, as there is no necessity for it, and as it is inapplicable to most cases that may arise. So little has this matter been in the mind of our legislators, that they have failed to adopt any of the English legislation in relation to it. The statute of the 3d and 4th of William and Mary has never been enacted in this state; so that, in actions of this kind, we are left entirely for our guidance to the ancient common law. By that law, if the heir aliened in good faith before suit brought, the creditor could not subject the land aliened to the payment of his debt. Lord Coke says: " If an action of debt be brought against the heir, and he alieneth, hanging the writ, yet shall the land, which he had at the time of the original purchase, be charged, for that the action was brought against the heir in respect of the land." (Folio 102, *b*.) But we conceive that this would depend on the nature of the judgment obtained against the heir. If the judgment was a special one against the land descended, an alienation of it pending the writ would not defeat the execution of the creditor. But where the judgment was a general one, such as was rendered in the action against the heir here, such judgment will not operate by way of relation to the original, but binds only in common cases from the time of the judgment given. (Gree v. Oliver, Carthews, 245–6.)

There was something said about fraud in the conveyances made to those under whom the defendant claims. The petition alleged that the conveyances were made without any consideration, and with an intent to defraud the plaintiff. The defendant denied that the deeds were made with any such intent, and insisted that they were valid and operative against the plaintiff. The plaintiff offered no evidence in support of the allegations of his petition in relation to fraud

and the want of a consideration, but on the pleadings asked the court to declare that fraud and the want of consideration stood confessed. The answer, though not so formal nor so full as it might have been, was sufficient to let the plaintiff know that his allegations in relation to fraud were not admitted. There is nothing in the pleadings which shows that the answer was studiously evasive or that it was intended to be so. Standing as the answer did, it would have operated as a surprise to the defendant, after the evidence had been closed, for the court to have declared that it was no denial of the plaintiff's allegations. If the plaintiff relied on the pleadings for proof, he ought to have called upon the court before the evidence was closed, that the defendant might have amended or introduced his proof. Surely his denial of the fraud was sufficient to let in proof that the deed was made in good faith and was valid.

Affirmed. The other judges concur.

[The plaintiff filed a motion for a rehearing on the ground that he was taken by surprise by the decision, inasmuch as it was the understanding of the counsel that the considerations mentioned in the deeds from Johanna Finck to Joseph Brohammer and from the latter to Lorenz Brohammer had never been paid, and that the charges of the petition in this matter were not specially denied in the answer because they could not be denied with truth, and that the answer was only designed to deny the fraudulent intent of the acts. The court, in overruling this motion, gave the following opinion :]

SCOTT, Judge, delivered the opinion of the court.

Even taking the matter as made by the petition for a rehearing, that the consideration of the deed was the point in issue, yet we do not see that the case is helped. If the deed was voluntary, it does not follow that it was fraudulent in law. The judgment was a general one. It does not appear that the defendant was in embarrassed circumstances, or that he had not other property sufficient to satisfy the execution. None of these facts are stated in the case.

When a party is endeavoring to obtain an estate worth not less than nine thousand dollars for the sum of two hundred

8—VOL. XXXI.

and eleven dollars, and makes a slip in his proceedings, the cause of justice is not subserved in permitting him to mend his hold.

Motion for rehearing overruled. The other judges concur.