## SAUER v. GRIFFIN *et al.*, *Appellants.*

1. **Appeal Bond: SURETY: ADMINISTRATION.** Until an appeal has been determined, the liability of a surety on the appeal bond is purely contingent, and, in case of his death, does not constitute a claim which the obligee may prove against his estate in the probate court.

2. **Devisee not Liable on Bond of Devisor.** A devisee is not liable on the bond of his devisor as an heir is on that of his ancestor. This was the rule at common law, and it has not been altered by Wag. Stat., sec. 7, page 1352, or by any other statute of this State.

3. **Liability of Heir.** An heir is not liable on the bond of his ancestor beyond the value of the estate descended.

*Appeal from Jackson Circuit Court.*—Hon. SAMUEL L. SAWYER, Judge.

*M. D. Trefren* for appellants.

*Wm. E. Sheffield* for respondent.

HOUGH, J.—This was a suit against the widow and minor child of one James H. Welch on a certain appeal bond, on which said Welch was surety. An agreed statement, or abstract of the record, has been filed, reciting the following facts: "James H. Welch, with others, in his life-time—to-wit, on the 24th day of June, 1870—became surety upon an appeal bond given in the case of the Kansas City Hotel Company, of Kansas City, Mo., against Joseph Seigmunt, wherein judgment had been rendered in the Kansas City court of common pleas, binding himself, his heirs, executors and administrators in the sum of $2,200, and conditioned that if said Seigmunt would prosecute his appeal from said judgment in said bond named with due diligence to a decision in the Supreme Court, and perform such judgments as the Supreme Court might give or direct the Kansas City court of common pleas to give, and if such judgment should be affirmed that he would

comply with and perform the same, and would pay all damages and costs which might be awarded against him in the Supreme Court, then said bond to be void, otherwise to remain in full force; which said bond was duly approved and filed in said Kansas City court of common pleas; that said judgment in said cause was afterwards, at the July term, 1873, of the Supreme Court, duly affirmed; that said Seigmunt wholly neglected to pay or perform such judgment; that afterwards, on the 23rd day of November, 1873, the said Kansas City Hotel Company duly sold and assigned said judgment to said Sauer, and also at the same time assigned and transferred said appeal bond to him, whereby he, said Sauer, became the legal holder thereof and entitled to enforce the same; that said James H. Welch died about the 1st day of January, 1871, at Kansas City, in said county; that defendant Martha Barnum was his widow, and defendant Emma Welch was his minor child, and that Frank Barnum, afterwards and before the commencement of this suit, married the said Martha, widow of the said James H. Welch, deceased; that said Martha Barnum, formerly Welch, and the said Emma Welch were the sole heirs of said James H. Welch, deceased; that said James H. Welch died seized of an estate of about $30,000, principally real estate; that he was possessed of no personal estate, except what was afterwards set apart to his widow by the probate court of Jackson county as her separate property; that said James H. Welch, by his last will and testament, duly probated in said probate court of Jackson county, devised all his real estate to his widow, Martha Welch, now Barnum, subject only to the payment of a legacy of $500 to his daughter, the said Emma Welch; that the real estate so devised was the same described in the petition and judgment in this cause; that on the 28th day of March, 1871, letters of administration, with the will annexed—on the estate of said James H. Welch were duly granted to said Martha Barnum, then Martha Welch, by the probate court of Jackson county,

and that she was duly qualified, and took possession of the estate of said James H. Welch, and still retains possession of the same; that as such administratrix she settled up the affairs of said estate, paying all debts then owing by said estate, and was on the 19th day of May, 1873, by said probate court duly discharged; that the judgment of affirmance in said case by the Supreme Court was not rendered until after the final settlement and discharge of the said Martha as administratrix as aforesaid; that there was no personal estate whatever belonging to said estate at the time of such final settlement and discharge; that the amount due on said judgment against said Seigmunt at the time the judgment was rendered in this cause was $1,272.55; that the judgment rendered in this cause was for the amount of penalty of bond to be satisfied by the payment of the said sum of $1,272.55, with interest at six per cent.; said sum to be paid within sixty days after the rendering of the judgment herein by defendants, or, in default of such payment, then the real estate devised to said Martha, or so much thereof as might be necessary, be sold to satisfy said damages, interests and costs, and that plaintiff have execution therefor."

It is argued by the appellants that the plaintiff had an adequate remedy at law, and, as he neglected to present his claim to the probate court for allowance, a court of equity will not interfere to help him now. The case of *Titterington v. Hooker*, 58 Mo. 593, is cited in support of this position. That case is wholly unlike the present. What was there said in regard to the exclusive jurisdiction of the probate court related to claims existing at the decedent's death. Here there was no claim which could have been presented for allowance during the existence of the administration. There was an obligation, it is true, out of which liability subsequently arose, but during the life of Welch, and pending the administration on his estate, it was purely contingent, and incapable of presentation or allowance. Any covenant he had entered

1. APPEAL BOND: surety: administration.

into in the conveyance of land, of which there had been a breach, could as easily have been proved against the estate. His liability on the bond did not become fixed until after final settlement. In the case of the *Presbyterian Church v. McIlhinny, Admr. de bonis non*, 61 Mo. 540, it was said that, "under our statute respecting administration, and the repeated adjudications of this court thereon, probate courts possess no power to allow any claims against a decedent's estate, or to order the sale of land belonging thereto, except for the payment of debts of the deceased—*i. e.*, those in existence at the date of his death"— and a grant of letters of administration *de bonis non*, after final settlement, and the proceedings of the probate court thereunder, in ordering the sale of real estate to pay a claim arising after such final settlement, were in that case declared to be *coram non judice*.

There being no right to proceed, under the administration law, to subject the lands of the testator, Welch, to 2. DEVISEE NOT LI- the satisfaction of the liability arising out ABLE ON BOND OF DEVISOR. of his suretyship, the rights of the plaintiff in this action must be determined by the common law, and not by the law regulating the administration of estates. In *Whittelsey v. Brohammer*, 31 Mo. 98, Judge Scott, in commenting upon an action similar to the present one, made the following observations : "The suit out of which this action has arisen is the first instance that has fallen under our observation in which an action has been brought on the bond of the ancestor against his heir. Under the common-law system of administering decedent's estates this was no uncommon thing, but our mode of administration is so different from that prevailing at the common law that an action of debt on a bond against an heir cannot be maintained, if at all, but under peculiar circumstances. The provisions in our code of laws which seem to contemplate the existence of the right to maintain such an action were taken, through inadvertence, from the laws of States whose system of administration conformed more nearly to

the common law.    *    *    So little has this matter been in the minds of our legislators, that they have failed to adopt any of the English legislation in relation to it. The statute of the 3rd and 4th of William and Mary has never been enacted in this State, so that in actions of this kind we are left entirely for our guidance to the ancient common law. By that law, if the heir aliened in good faith before suit brought, the creditor could not subject the land aliened to the payment of his debt." The remainder of the opinion is unimportant in this connection.

We cite the foregoing observations simply to show that whenever a suit is brought against the heir on the 3. LIABILITY OF bond of the ancestor, the rights of the par-HEIR.
ties are to be determined by the common law. So, too, in the case of a devisee. Now, by the common law, the devisee was not bound by the covenants of his testator, nor could the land be followed in his hands. *Plasket v. Beeby*, 4 East 491.    In this respect, says Mr. Rawle, in his treatise on covenants, he enjoyed a greater immunity than the heir, for the latter, when named in his ancestor's covenants, was liable to the amount of the assets which had descended to him, but a devisee took the land clear of all liability. Rawle on Cov. 596.    To remedy this injustice to the specialty creditors of the devisor, the statute of 3rd William and Mary, chapter 14, entitled " An act for relief of creditors against fraudulent devisees," was enacted.    That statute recited that many persons, who had bound themselves and their heirs by bonds and other specialties, had, to the defrauding of such of their creditors, by their last will and testament devised their lands, or disposed of the same, in such manner that such creditors had lost their debts, and provided that all wills, &c., shall be taken, as against such creditors and their executors, to be void and of no effect, and gave the creditors a right of action upon these specialties against the heir and devisees jointly, and the devisees were made liable in the same manner as heirs,

notwithstanding alienation by them. We have been unable to find among our laws any similar or equivalent enactment, notwithstanding attention was called to this defect in our legislation nearly eighteen years ago. In the absence of such enactment we are bound, by the provisions of general statutes, to accept the common law as our guide. By that law the judgment in this case must be declared to be erroneous, because Mrs. Barnum is not an heir, but a devisee simply, and she now holds the lands devised to her discharged of all liability arising out of the obligations of the devisor, and, further, because the judgment against Emma Welch is in excess of the sum received by her from her father's estate. The judgment will, therefore, be reversed and the cause remanded. All concur.

REVERSED.

## On Motion for Rehearing.

Hough, J.—The statute referred to in the motion for a rehearing, which has been filed in this cause, was not overlooked by us in arriving at the conclusion heretofore announced. The sections referred to have been in force certainly since 1845, and perhaps from an earlier date, and they are evidently the provisions referred to by Judge Scott in his opinion in *Whittelsey v. Brohammer*, 31 Mo. 107, as having been inadvertently adopted in this State without the necessary supplemental legislation. Section 7 of the statute of uses and trusts (Wag. Stat., page 1352) declares that the heirs and devisees of every person who shall have made any covenant or agreement shall be liable, &c., " in the cases and in the manner prescribed by law." But no provision has been made by law on the subject, and hence, as Judge Scott observed, we are left for our guidance to the ancient common law. This strikes us as a hard case, but we cannot usurp the province of the Legislature. All

the judges concur in overruling the motion for a rehearing except Judge HENRY, who is absent.